# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | § § § § | **C.A. NO. 6:20-cv-00487-ADA** <br> **C.A. NO. 6:20-cv-00488-ADA** <br> **C.A. NO. 6:20-cv-00489-ADA** |
| *Plaintiff*, | § § | **C.A. NO. 6:20-cv-00490-ADA** <br> **C.A. NO. 6:20-cv-00491-ADA** |
| v. | § § | **C.A. NO. 6:20-cv-00493-ADA** <br> **C.A. NO. 6:20-cv-00494-ADA** |
| **ZTE CORPORATION,** | § § | **C.A. NO. 6:20-cv-00495-ADA** <br> **C.A. NO. 6:20-cv-00496-ADA** |
| *Defendant.* | § § § | **C.A. NO. 6:20-cv-00497-ADA** <br><br> **JURY TRIAL DEMANDED** |

## ZTE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S FINAL INFRINGEMENT CONTENTIONS

**TABLE OF CONTENTS**

I.   WSOU FAILED TO CURE THE DEFICIENCIES WITHIN *ANY* OF ITS INFRINGEMENT CONTENTIONS ................................................................................ 1

II.  WSOU'S INFRINGEMENT CONTENTIONS REMAIN DEFICIENT .......................... 2

   A. The Infringement Contentions Fail to Provide Notice of the Infringement Theories and Notice of the Named Accused Products ............................................ 3

      1. The Contentions Use Improper Broad Allegations Untethered to the Charted Accused Product ....................................................................... 4

      2. The Contentions Fail to Properly Identify a Representative Product ......... 4

   B. The Infringement Contentions Fail to Disclose WSOU's Doctrine of Equivalent Theories and Fail to Identify Means-Plus Function Limitations .......... 8

III. WSOU FAILS TO JUSTIFY RESETTING FACT DISCOVERY BY ADDING MORE THAN 400 NEW ACCUSED PRODUCTS .......................................................... 8

IV.  CONCLUSION .............................................................................................................. 10

## TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| 1 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-487, Complaint, Dkt. 1 |
| 2 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-488, Complaint, Dkt. 1 |
| 3 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-489, Complaint, Dkt. 1 |
| 4 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-490, Complaint, Dkt. 1 |
| 5 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-491, Complaint, Dkt. 1 |
| 6 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-492, Complaint, Dkt. 1 |
| 7 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-493, Complaint, Dkt. 1 |
| 8 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-494, Complaint, Dkt. 1 |
| 9 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-495, Complaint, Dkt. 1 |
| 10 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-496, Complaint, Dkt. 1 |
| 11 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-497, Complaint, Dkt. 1 |
| 12 | Exhibit C: Brazos Proposed Preliminary List - Reasonably Similar Products as of April 28, 2022 |
| 13 | May 23, 2022 Letter from ZTE to Brazos RE Infringement Contentions |
| 14 | May 12, 2022 Discovery Hearing Transcript |
| 15 | Brazos' First Amended Final Infringement Contentions -487 |
| 16 | Brazos' First Amended Final Infringement Contentions -488 |
| 17 | Brazos' First Amended Final Infringement Contentions -489 |
| 18 | Brazos' First Amended Final Infringement Contentions -490 |
| 19 | Brazos' First Amended Final Infringement Contentions -491 |
| 20 | Brazos' First Amended Final Infringement Contentions -493 |
| 21 | Brazos' First Amended Final Infringement Contentions -494 |
| 22 | Brazos' First Amended Final Infringement Contentions -495 |
| 23 | Brazos' First Amended Final Infringement Contentions -496 |
| 24 | Brazos' First Amended Final Infringement Contentions -497 |

| | |
|---|---|
| 25 | Detailed Table of WSOU's Newly Added Accused Devices |
| 26 | Brazos' Final Infringement Contentions -487 |
| 27 | Brazos' Final Infringement Contentions -488 |
| 28 | Brazos' Final Infringement Contentions -489 |
| 29 | Brazos' Final Infringement Contentions -490 |
| 30 | Brazos' Final Infringement Contentions -491 |
| 31 | Brazos' Final Infringement Contentions -493 |
| 32 | Brazos' Final Infringement Contentions -494 |
| 33 | Brazos' Final Infringement Contentions -495 |
| 34 | Brazos' Final Infringement Contentions -496 |
| 35 | Brazos' Final Infringement Contentions -497 |
| 36 | [New] Federal Communications Commission November 25, 2022 Press Release, "FCC Bans Equipment Authorizations for Chinese Telecommunications and Video Surveillance Equipment Deemed to Pose a Threat to National Security." |
| 37 | [New] Modified Exhibit 25 with WSOU's proposed 400+ new devices from First Amended Final Infringement Contentions |

I. **WSOU FAILED TO CURE THE DEFICIENCIES WITHIN *ANY* OF ITS INFRINGEMENT CONTENTIONS**

All of the infringement contentions fail to satisfy this Court's standard for providing sufficient notice of the pending infringement theories. This Court's standing orders "protect[ ] defendants from frivolous plaintiffs who seek settlements based not on merit but based on the burden of discovery." *CPC Patent Technologies Pty Ltd. V. HMD Global Oy*, 6-21-cv-00166 (W.D. Tex. August 31, 2022). Among other requirements, this Court implements a "higher standard" for *final* infringement contentions requiring that a patentee specify where and how each limitation of each asserted claim is found in each accused instrumentality. *IGT v. Zynga Inc.*, 2022 WL 606719, at *2 (W.D. Tex. Mar. 1, 2022). And Texas courts routinely find that the "catch-all" language WSOU relies on fails to provide notice of plaintiff's infringement theories. *Sol IP, LLC v. AT&T Mobility LLC*, 2020 WL 1911388, at *3 (E.D. Tex. Apr. 20, 2020). These requirements exist "not only so that [accused infringers] can properly respond to the claims against them, but so that the Court can make a principled decision on whether discovery will proceed." *Geovector Corp. v. Samsung Elecs. Co.*, 2017 WL 76950, at *5 (N.D. Cal. Jan. 9, 2017).

The contentions, however, fail to satisfy this Court's, or any other noted district court's standards for final infringement contentions. Much like the *OnePlus* case, WSOU's contentions here yet again consist almost entirely of boilerplate recitations of claim elements, unexplained screenshots or webpage excerpts, and irrelevant marketing and public source code cross-references. *WSOU Investments LLC v. OnePlus Tech. (Shenzhen) Co., Ltd.*, 2022 WL 174517 at *2 (W.D. Tex. 2022). Not only do the contentions fall short on a limitation-by-limitation basis for the *four* charted products, but the contentions further fail to explain how those four products are representative of the other 70 Accused Products (or the 400+ other devices WSOU seeks to add

on the eve of the close of fact discovery). Thus, to "protect" ZTE from improper motives, not based on merit but based on the burden of discovery, the contentions must be struck.

In the unlikely event that this Court permits WSOU to amend its *Final* contentions by increasing fact discovery nearly five-fold (with 400+ new devices) with less than a month remaining of fact discovery, then ZTE requests that the Court provide the parties the same reset of fact discovery ordered in the *Google* cases, to permit WSOU's untimely discovery expansion and permit the parties sufficient time to address inevitable discovery disputes (such as the FCC's recent ban on all sales of ZTE devices). *See WSOU Investments LLC v. Google LLC*, Case No. 6:20-cv-00572-ADA, Dkt. 126 (W.D. Tex., August 15, 2022); *see also* Ex. 36 (FCC November 25 ban).

## II.  WSOU'S INFRINGEMENT CONTENTIONS REMAIN DEFICIENT[1]

WSOU musty identify specifically where *each* limitation of *each* asserted claim is found within *each* Accused Product. Courts require "the party claiming infringement to crystalize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). And the degree of specificity "must be sufficient to provide reasonable notice to the [accused infringer] why the [patentee] believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (internal cites omitted).

Yet, despite this obligation, every version of the contentions fails to identify an infringement theory on a limitation-by-limitation basis for even a *single* product, much less every

---

[1] WSOU erroneously implies that ZTE's counsel noted timely service of the Final Infringement Contentions. Opp., p. 3 (arguing that ZTE acknowledged the contentions were "served 'last night,' *i.e.*, on July 16"). In truth, ZTE's counsel never confirmed a timely service, and stated the opposite that ZTE was "unable to access the final infringement contentions." *Id*. ZTE never represented timely service by the July 16 deadline. *See, e.g.,* Opp., Ex. 1; Motion to Strike, Ex. 13, p. 1 (regarding deficiencies in infringement contentions "served on July 17, 2021"). And for the lone added product from the July 17th Final Infringement Contentions, the Axon 30 Ultra, ZTE has consistently maintained that it is not an Accused Product—and WSOU failed to address this issue.

Accused Product (or even the 400+ new devices WSOU seeks to untimely add on the eleventh hour). Instead, WSOU lumps the accused products into alleged representative charts for the eleven different patents for just *four* products that similarly fail to identify an infringement theory on a limitation-by-limitation basis for any of them. *See* Motion to Strike, p. 5. This improper grouping obscures deficiencies such as: (1) WSOU's improper use of broad and generic allegations that bear no link to the products; (2) WSOU's failure altogether to identify alleged for the "representative" products; and (3) WSOU's repeatedly copying and pasting of the same irrelevant materials as "support" for disparate claim limitations without tying the evidence to each limitation at issue.

Further yet, in opposition, WSOU misapplies the law, and contorts the language of its own contentions in an endeavor to overcome the reality that its contentions fail to provide sufficient notice of its infringement theories (or even which devices are named Accused Products). The barebone revisions WSOU identifies in any of its amendments fail to move the needle closer to crystalizing WSOU's infringement theories on a limitation-by-limitation basis, but rather, act as a smoke screen concealing WSOU's improper attempts to add more than 400 new devices to these cases on the eve of closing fact discovery. For these reasons, WSOU's contentions are insufficient and should be stricken without leave to amend.

    **A.**    **The Infringement Contentions Fail to Provide Notice of the Infringement Theories and Notice of the Named Accused Products**

Rather than crystalize its infringement theories by identifying which components of a single representative Accused Product allegedly infringe on a limitation-by-limitation basis of the claim elements, WSOU insists that its cherry-picking of components spread across nearly 75 devices (and up to 475 devices) satisfies the notice requirement for a single contention chart. *See Zipit Wireless Inc. v. Blackberry Ltd.*, 2016 WL 5933975, *7 (D.S.C. Oct. 12, 2016) (quoting *L & W. Inc. v. Shertech, Inc.*, 471 F.3d 1311 (Fed. Cir. 2006), plaintiff "cannot cherry-pick"). And, for

the uncharted "similar" devices, WSOU insists on illogical gymnastics to improperly connect the *four* charted products and the 475+ uncharted products. Despite WSOU's allegations otherwise, it fails to show that a single chart for a single Accused Product is sufficient, much less that all 475+ accused devices are either charted or represented by a charted product.

### 1. The Contentions Use Improper Broad Allegations Untethered to the Charted Accused Product

All versions of the contentions remain deficient for the same reason: lacking analysis connecting the claim limitations to products. For each claim, WSOU merely pastes screenshots and parrots claim language without offering analysis tethering the product to claim elements. And the remaining analysis consists of bare cross-references without addressing the many additional element limitations. The contentions are formulaic lacking true analysis. Each claim's "analysis" follows the very same pattern of stating boilerplate conclusory statements about direct and indirect infringement, followed by verbatim recitation of the claim element, and a broad conclusory statement alleging connection between the ZTE device and third-party components or standards. Then, the "analysis" jumps to generic marketing, screen shots, and public source code data dumps without explanations or comparison between the claim elements and the products. These broad and generic contentions are an impermissible attempt to dodge and should be struck.

### 2. The Contentions Fail to Properly Identify a Representative Product[2]

The contentions are fundamentally flawed because they improperly cherry-pick and lump together numerous disparate products without identifying an infringement theory for a *single* accused product on a limitation-by-limitation basis. A patentee may only rely on "representative

---

[2] In opposition, WSOU alleges that ZTE "did not object to the definition of Accused Products or Accused Instrumentalities" until filing this Motion to Strike. Opp., pp. 3-4. In truth, ZTE raised issues of the scope of WSOU's Accused Products on multiple occasions including by letter on at least October 20, 2021; April 15, 2022; May 23, 2022; and July 15, 2022.

charts" if it meets its burden of showing that any uncharted product operates in the same way as a charted product and meet the limitations for the same reasons. *See CAP Co. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015). This analysis, however, requires support and "cannot just be based on the patentee's say-so." *Silicon Labs., Inc. v. Cresta Tech. Corp.*, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015).

Many of the accused devices that WSOU argues are "described in Brazos's claim charts," are not actually *charted* on a limitation-by-limitation basis. For example, WSOU claims that the ZXR10 5900E product is as an exemplary product, but the contentions merely describe a single feature within a few different claim limitations—the product is not actually charted by limitation:

> Source: Exhibit D, p. 125-126.
>
> The access node searches the MFF user information table based on the source IP address and source MAC address in the ARP request from host A to retrieve the IP address of the access router (namely, the gateway of host A).
>
> Source: Exhibit C, p. 126.
>
> An example scenario involves a DHCP response message (an example of "access response message") that is received by the ZXR10 5900E series switch from the DHCP server in the VLAN. The screenshot below describes an example configuration of a DHCP server in a VLAN.

Motion to Strike, Ex. 26.

WSOU fails to demonstrate how any charted product is representative of any others beyond its own say so. The burden is on *WSOU* to prove that its "representative" products share the same critical characteristics. *See CAP*, 2015 WL 4734951 at *2. This, however, requires support and "cannot just be based on the patentee's say-so." *Id.*; *Silicon Labs.,* 2015 WL 846679 at *2; *see also Uniloc.*, 2018 WL 3219486, *3 (N.D. Cal. July 2, 2018) (noting that the patent owner "must explain *how* its laundry list of accused products operate in the same manner for infringement purposes"). WSOU's infringement contentions fail to specify *how* its "representative" products are representative of the hundreds of uncharted products; as the contentions improperly combine a multitude of products *and* third-party Android apps, all with very different features,

5

functionalities, components, and purposes. WSOU's attempt to consolidate all of these different products together into one theory of infringement is impermissible, and WSOU's cherry-picking selective inclusion of certain devices to exemplify a subpart of a limitation does not amount to proper charting of a single representative Accused Product.

In opposition, WSOU relies on *Team Worldwide*, arguing that "[c]ourts do not require that each and every instrumentality be charted." Opp., p. 7, n. 6, quoting *Team Worldwide Corp. v. Academy, LTD*, 2020 WL 4601635 at *4 (E.D. Tex. 2020). There, however, the court distinguishes itself from cases that "were directed to complex computer technology" because "the technology, claims, and infringement theory in this case are simple." *Id.* at *4. In contrast, here, the technology relates to complex computer technology—far more intricate than the air mattress pumps at issue in *Team Worldwide Corp.* Similarly, WSOU's string cite in support of the proposition that "analogous products may be grouped together for a number of reasons" contains inapposite or readily distinguishable caselaw. Opp., pp. 9-10.[3]

The contentions are deficient under any standard, and certainly deficient under this Court's standard. For instance, in *Zynga* this Court held that "a higher standard of detailing claim charts with specific descriptions of how each product is represented by a single charted product applies

---

[3] Four of the cases regard the disposition of a motion for summary judgement where the movant carried the burden—not a motion to strike infringement contentions where WSOU carries the burden to demonstrate its contentions provide sufficient notice of the infringement theories. *See Endo Pharms. Inc. v. Amneal Pharms.*, LLC, No. 12 Civ. 8060, 2015 WL 9459823, at *36-37 (S.D.N.Y. Aug. 18, 2015), *amended in part*, No. 12 Civ. 8060, 2016 WL 1732751 (S.D.N.Y. Apr. 29, 2016); *ASUS Computer International v. Round Rock Research, LLC*, 2013 WL 5545276, *2-*4 (N.D. Cal. 2013); *Network Protection Sciences, LLC v. Fortinet, Inc.*, 2013 WL 5402089, *2-*4 (N.D. Cal. 2013); *Hid Glob. Corp. v. Farpointe Data, Inc.*, No. SACV101954JVSRNBX, 2012 WL 13018341, at *3 (C.D. Cal. Apr. 13, 2012). The remaining cases were denied due to either untimely objections—but ZTE timely raised objections to the contentions here (*Kenexa Brassing, Inc. v. Taleo Corp.*, 2010 WL 4668999, *6 (D. Del. 2010)), or due to a failure to any objection at all (*Parkervision, Inc. v. Qualcomm Inc.*, 2015 WL 4751354, at *4 (M.D. Fla. Aug. 11, 2015)).

to a plaintiff's *final* infringement contentions." *Zynga*, 2022 WL 606719 at *2 (emphasis added). Courts routinely find that the "catch-all" language WSOU relies on is contrary to local rules and fails to provide notice of plaintiff's infringement theories. *Sol IP*, 2020 WL 1911388 at *3. Here, WSOU's *Final* infringement contentions fail to satisfy the "higher standard" of detailing how *each* of the accused products is represented by *each* charted product, and WSOU fails to prove that any Accused Product is representative of the other uncharted products.

This Court already cautioned WSOU against its barebone style of contentions and failures to properly disclose representative products in the *OnePlus* cases. In fact, this Court already instructed WSOU that products that were "identified outside of the claim charts within the infringement contentions" are not properly charted because such action does not provide defendant with notice of WSOU's theory as to how each of those accused device allegedly infringes. *OnePlus Tech.*, 2022 WL 174517 at *2 ("[I]n an effort to provide fair notice and fulsome, albeit repetitive responses in WSOU's eyes, WSOU must more fully explain why the charted product is representative of each individual uncharted product or chart each product individually").

WSOU erroneously attempts to distinguish its contentions here from its deficient contentions in the *OnePlus* cases. *See* Opp., p. 19. But, although the Court ultimately denied OnePlus' motion to strike the *preliminary* contentions (as non-Final), the Court's findings there still apply as the Court "agree[d] with OnePlus's characterizations regarding the… doctrine of equivalents claims" and explicitly reserved an opportunity for OnePlus to file another motion to strike after WSOU provides its final infringement contentions. *OnePlus*, 2022 WL 174517 at *3. In the case at hand—which is well past the preliminary infringement contentions stage—*all versions* of the contentions still contain the same deficiencies that the *OnePlus* court noted. Thus, for the same reasons, the Court should strike these boilerplate contentions.

7

### B. The Infringement Contentions Fail to Disclose WSOU's Doctrine of Equivalent Theories and Fail to Identify Means-Plus Function Limitations[4]

WSOU improperly seeks to delay disclosing its doctrine of equivalents theories of infringement until the close of expert discovery. *See* Opp., p. 13-14. In lieu of providing notice of how the accused products allegedly infringe under the doctrine of equivalents, WSOU simply includes boilerplate language throughout *each* of its claims—not just the preamble. *See, e.g.,* Ex. 13, pp. 17, 30, 48, 79, 95, 108, 120, 133, 145, 159, 172, 179 (*compare* Ex. 30 with same). And it is "improper to assert the doctrine of equivalents with generic 'placeholder' language on the hope that future discovery might support such an assertion." *Finjan*, 2015 WL 1517920 at *10; *see also Uniloc*, 2018 WL 3219486 *4. In fact, "[s]imply stating that the patentee intends to assert the doctrine of equivalents as an alternative theory does not 'provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement.'" *Shared Memory*, 812 F. Supp. 2d at 1025. WSOU cannot "merely add boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory." *Creagri, Inc. v. Pinnaclife Inc., LLC*, 2012 WL 5389775 at *6 (N.D. Cal. 2012). Rather, WSOU must specify in what way the products allegedly infringe under the doctrine of equivalents. *See id.*

### III. WSOU FAILS TO JUSTIFY RESETTING FACT DISCOVERY BY ADDING MORE THAN 400 NEW ACCUSED PRODUCTS

WSOU's untimely attempt on the eleventh hour of fact discovery (after failing altogether to meet-and-confer on these issues)[5] to amend its *final* contentions is primarily a request to reset

---

[4] WSOU argues that the disputes for case nos. -488 and -496 are moot because "the patents have been invalidated." Opp., p. 2. These cases, however, remain active primarily due to WSOU's refusal to stay the cases pending the post-grant proceedings, and WSOU continued to seek discovery for these cases until at least October 28, 2022—well after ZTE's October 21st filing herein. And ZTE's arguments pertaining to the means-plus-function claims of case no. -496 remains unmooted until the case is dismissed *with prejudice*.

[5] WSOU fails to acknowledge its own improper duplicitous behavior, and instead alleges wrongdoing by ZTE for following the appropriate procedures of first meeting before filing.

8

fact discovery with more than 400 new products *disguised* as an update to the underlying contentions. In response, WSOU argues that that the 475+ devices it now seeks to add are connected in some web of categories because the products are: (A) "part of a series," (B) "same device, same model, different version," (C) "same device, different model," or (D) "reasonably similar,"—but WSOU fails to offer concrete logical definitions for its made-up categories.[6] More so, WSOU offers no explanation for why it failed to offer these new devises for consideration during the May 12th hearing (Dkt. 222). None of these devices are *new*—WSOU simply failed to raise them before and should not be allowed to add them now on the eve of close of fact discovery.

Most courts do not permit such "broad categorical identifications"—like "mobile devices running Android," "mere representative examples," or the ability to identify accused products "by functionality." *See, e.g.*, *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), 2012 WL 9973147, at *4 (N.D. Cal. July 12, 2012); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011). Instead, a "full list of accused products must be disclosed as part of a party's infringement contentions." *Id.* at *2. WSOU's broad categorical identifications and improper use of open-ended language ("any variants of") should be stricken. *See Uniloc*, 2018 WL 3219486 *3 (finding that "use of strategic open-ended language is improper.") And WSOU's allegations should be limited to the products specifically identified in the preliminary infringement contentions or specifically listed for the May 12th hearing. *See* Motion to Strike, p. 5 and Ex. 25; *see also* Ex. 37.

---

*Compare* Opp., p. 1 *with* Motion to Strike, n. 1. Not only did WSOU fail to meet on its own duplicitous motion, but it purposefully delayed this motion in a race to the courthouse. *Id*.
[6] In opposition, WSOU alleges that ZTE "admits" that four groups of products are charted. Opp., p. 1-2. In truth, ZTE stated that 4 different *accused devices* were charted, but done so improperly. *See* Motion to Strike, pp. 13-14. Nowhere does ZTE state that "groups of products" were charted.

9

WSOU must do more than state these products are similar, as a "patentee must state how."

*Silicon Labs*, 2015 WL 846679 at *2. With respect to WSOU's "categories," (Dkt. 288, Exs. 7-8):

- WSOU merely states that devices such as "Axon 30 Ultra Aerospace," and "Axon 30 Ultimate Edition," are "part of a series," but WSOU fails to analyze or show how the devices have similar hardware or software components operating in a similar fashion with respect to the claim limitations at hand. These devices in fact have very different features, functionalities, components and purposes.
- Next, WSOU argues that devices like "Blade X1" and "Blade X9" are the "same device, same model, [but] different version,"—but WSOU again fails to explain how these devices are (1) the same device, (2) the same model, (3) or even similar "versions" of each other. A moniker such as "iPhone" or "Blade" is hardly a sufficient basis to show how an "iPhone 2" is similar to the "iPhone 14" as WSOU seeks here to argue with the "Blade" moniker.
- More so, as another example of WSOU's ill-conceived "categories," WSOU offers no explanation for how "Blade X1," is the same model as "Blade X9," but "Axon 40 Ultra 5G," is a different model from "Axon 41 Ultra 5G."
- And lastly, WSOU refuses altogether to explain how its "reasonably similar products" are similar to either each other or any other device. WSOU fails to distinguish these "categories" and the underlying devices therein by something other than its own arbitrary terms—WSOU fails to show how the devices have similar hardware or software components operating in a similar fashion with respect to the claim limitations at hand (and thus should not be added to these cases).

In the unlikely event that this Court permits the addition of 400+ new devices on the eleventh hour, thereby effectively resetting fact discovery, then this Court must reset the schedule accordingly to permit sufficient time for discovery (and the inevitable discovery disputes). The Court already granted such a relief and extension in the *Google* cases where it effectively reset fact discovery after granting WSOU's eleventh hour request to expand discovery over newly added devices. *See Google*, No. 6:20-cv-00572, Dkt. 126. Such an extension is even more appropriate here to permit efficient resolution of discovery issues stemming from the November 25, 2022, FCC prohibition of the sale of ZTE devices in the United States. Ex. 36 (FCC November 25 ban).

**IV.   CONCLUSION**

For the above reasons, WSOU's contentions should be struck with prejudice.

10

DATED:  November 29, 2022    Respectfully submitted,

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
  Phone:  (571) 203-2700
  Fax:     (202) 408-4400

Attorney for Defendant,
ZTE Corporation

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on November 29, 2022.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
